H. R. TRAVIS et al., Plaintiffs-Appellees, v. BARNEY J. GRABIEC, Director of Labor et al., Defendants-Appellants.

(No. 69-44;

Fifth District—December 23, 1970.

Schlafly, Godfrey & Fitzgerald, of Alton, and William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and A. Zola Groves, Assistant Attorneys General, of counsel,) for appellants.

John Dale Stobbs, of Alton, for appellees.

Mr. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, Barney J. Grabiec, Director of Labor, hereafter called the Director, and Shell Oil Company, hereafter called Shell, appeal from

the judgment of the Circuit Court of Madison County reversing the decision of the Director which held certain of Shell's employees ineligible for benefits under the Unemployment Compensation Act.

At its refinery in Wood River, Shell employs approximately 3100 employees. On August 18, 1962, 2070 of its employees, represented by 13 labor unions, commenced a strike which continued until February 3, 1963. A number of the striking employees filed claims for benefits under the Unemployment Compensation Act, and on March 25, 1963, the Director filed his decision holding them ineligible for benefits. The employees sought administrative review and on May 4, 1966, the Circuit Court of Madison County remanded the cause to the Director to take additional evidence on the issue of whether during the strike Shell resumed "substantial normal production" and if so, when.

On June 21, 1967, the Director filed his decision, again holding the employees ineligible for benefits, in which he states, *inter alia:*

"The Director of Labor submits that he is not certain as to those elements which must be considered in order to make a finding of fact that during the specific period a 'substantial resumption of operations' existed at the premises of the Shell Oil Co. during the period here in question. He is able to conclude from the entire record herein, only that there is sufficient evidence to warrant a finding that by December 27, 1962, the company was producing 175,000 barrels of its product, which was substantially the same daily thruput as was achieved prior to the strike and during periods when all workers were at their regular jobs.

The Director of Labor in making this Finding relative to the daily thruput of the company's product does not intend in any way to indicate his concurrence in or acceptance of this standard for determining the cessation of a stoppage of work within the provisions of Section 604 of The Unemployment Compensation Act.

The Director of Labor is of the opinion that the correct standard for determining the cessation of a stoppage of work is as dictated in the three-fold test announced by the Supreme Court as stated hereinabove, and in the Report and Further Report of the Director's Representative."

As authority for his "three-fold test", the Director cites *Abbott Publishing Co. v. Annunzio,* 414 Ill. 559 and in his decision quotes from page 566 of the Supreme Court's opinion as follows:

"* * * the majority rule holds that where the employer has permanently replaced all the employees whose employment was terminated in the course of a labor dispute, has fully resumed its normal plan of operations and resumed previous production, then the unemployment

of its former employees is no longer due to a stoppage of work because of a labor dispute at the employer's plant  *  *  *."

The employees again sought administrative review, the circuit court reversed the decision of the Director, found the employees eligible for benefits for the period commencing with December 27, 1962 and including February 2, 1963, and this appeal followed.

The evidence shows that the production noted in the Director's decision was achieved by approximately 700 non-union and supervisory personnel. During the period in question some laboratory, construction and maintenance activities were curtailed, and not all departments achieved the same levels of production. There was no permanent replacement of striking employees. Several hundred of the union employees terminated their employment by resignation or early retirement, and after the strike the number of permanent personnel was reduced by approximately the same number of employees as there were resignations and retirements.

Shell and the Director contend that the Director's finding that "There was a stoppage of work at the said premises each week from August 18, 1962 to February 2, 1963, both inclusive." is a finding of fact, supported by substantial evidence, is not against the manifest weight of the evidence, and the circuit court erred in reversing it.

■■ In our opinion, however, the record presents no material controversy as to the facts, and the question of when the work stoppage ceased to exist is one of law.

The statute pertinent to this controvesy is Section 604 of the Unemployment Compensation Act (Ill. Rev. Stat. ch. 48, par. 434,) and provides in part:

"Labor Dispute. An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed  *  *  *."

The Director and Shell contend that under "the three-fold test" of Abbott a stoppage of work resulting from a labor dispute terminates when three conditions are met: the replacement of all the employees, the resumption of the employer's normal plan of operations, and resumption of previous production.

The trial court in a comprehensive opinion filed upon entry of judgment held:

"When Shell Oil Company, by whatever methods used inside its own plant, reached substantial normal production on December 27, 1962, the stoppage of work due to a labor dispute ended, and since

the production record continued at substantially normal production until the end of the strike on February 2, 1963, the remaining eligible employees of the 450 claimants are entitled to benefits from December 27, 1962 to and including February 2, 1963."
and the appellees contend this is the proper test to be applied.

*Abbott Publishing Co. v. Annunzio,* 414 Ill. 559, leaves no question that the term "stoppage of work" as used in the statute refers to a stoppage of work at the place of employment and does not refer to the "stoppage of work" of the individual employee, and the issue very narrowly presented is whether the termination of the stoppage of work requisite to make appellees eligible for benefits occurred upon resumption of substantially normal production, or whether the stoppage terminates only when the Director's "three-fold test" is met.

■■ The Director and Shell contend that the Unemployment Compensation Act (Ill. Rev. Stat., ch. 48, pars. 300—820,) is a substantial re-enactment of the English National Insurance Act of 1911, and the section of that Act from which the language of 604 is derived has been construed to mean that strikers are disqualified from benefits until "there is a general return to work" or "their places are filled". They argue that the Director's interpretation of the Act, based upon the language of *Abbott Publishing v. Annunzio,* is therefore correct. They cite no decisions of the English courts in support of their argument, and we are mindful of the Supreme Court's statement in *American Steel Foundries v. Gordon,* 404 Ill. 174, wherein at page 187, the Court said "We deem it sufficient to observe that rulings of administrative agencies upon similar acts containing similar words, although persuasive, are not binding or controlling upon the courts."

It is apparent from the opinion in *American Steel Foundries v. Gordon,* 404 Ill. 174 that the period of ineligibility, and the strike or labor dispute, need not be co-extensive in time, and the labor dispute may be terminated while the stoppage of work continues to exist. The question for determination here, conversely, is whether the stoppage of work may terminate, and the labor dispute continue.

Although the Illinois courts of review have not considered the precise issue here presented, the question has arisen in other jurisdictions.

In *Cumberland and Allegheny Gas Company* (Supreme Court of Appeals, W. Va. 1963), 130 S.E.2d 115, all of the company's 79 hourly paid employees ceased to work, and their duties were performed by 17 supervisory and promotional employees. Although some activities were curtailed, and some customers were billed on an estimated basis because meters were not read, the flow of gas remained approximately normal. The court held that a "stoppage of work" means a substantial curtailment

of the employer's normal operations, and since none was shown, the claimant employees were eligible for benefits.

In *Monsanto Chemical Company v. C. R. Thornbrough* (Supreme Court of Arkansas, 1958) 314 S.W.2d 493, 91, supervisory employees maintained "roughly the equivalent of normal production" while 339 production employees were on strike. Rejecting the employer's contention that the stoppage of work continued until the plant's production was normal in every respect, the court held the stoppage ends "when the employer regains production to a point at which his business operations are substantially normal". The court observed, "It is of course apparent that if a resumption of completely normal operations were required, the employer could continue the stoppage indefinitely by leaving a small department of his plant idle." l.c. 496.

In *Meadow Gold Dairies—Hawaii Ltd., et al. v. Wiig* (Supreme Court of Hawaii 1968), 437 P.2d 317, during a strike, the dairies' business operated at 82% of normal production by utilization of their non-union regular employees and temporary employees, although home deliveries stopped. The court held there was no stoppage of work which made the claimant-employees ineligible for benefits.

In *General Electric Co. v. Director of Div. of Emp. Sec.* (Supreme Judicial Court of Mass., 1965), 208 N.E.2d 234, certain work was transferred to an outside shop because of a strike by the plant's welders. By "farming out" the work the employer suffered no disruption of delivery of its products. The issue presented was whether the claimants' unemployment resulted from the stoppage of work caused by the labor dispute or from the transfer of the work to outside sources. The court held the farming out of the work resulted from the employer's being prevented from doing the work in its usual manner, and the period of unemployment, therefore, was the result of the work stoppage.

The language of the *Annunzio* case, quoted above, appears to state that the termination of a stoppage of work requires resumption of the employer's "normal plan of operations" and "previous production". In that case the evidence showed that by July 10, 1948, the employer had replaced the striking employees to the extent that it employed the same number of employees in its composing room which were normally employed prior to the strike, and these employees were paid at the rate prevailing on the date the employees left their jobs. The court held the stoppage of work caused by the strike terminated as of that date (July 10, 1948) and the employees were eligible for benefits.

In *Shell Oil v. Cummins*, 7 Ill.2d 329, the court at page 335 states the period of disability "terminates upon the resumption of normal production activity."

Although the elements of the "three-fold" test are present in *Abbott Publishing,* we do not agree that the case is authority for the proposition that these elements are essential to the termination of every stoppage of work. The language appears in the court's discussion of the "general rule" and the opinion does not purport to state that all of these elements are essential in every case.

A careful reading of *Shell Oil v. Cummins* shows clearly that as stated, the matter is dictum, and not essential to the decision of the case. We do not, therefore, find these cases to be decisive of the issue.

■■ From our review of the authorities we conclude that the rule enunciated in the West Virginia, Arkansas and Hawaii cases above discussed should be applicable to the facts reflected in this record and the trial court reached the correct result.

Citing *Walgreen v. Murphy,* 386 Ill. 32; *Fash v. Gordon,* 398 Ill. 210; *Local Union No. 11 v. Gordon,* 396 Ill. 293; and *American Brake Shoe Company v. Annunzio,* 405 Ill. 44, Shell and The Director contend that the appellees' unemployment was voluntary, the intent of the Act is to lighten the burden of "involuntary unemployment", and the awarding of benefits contravenes the public policy as declared by the Act itself.

■■ In Abbott Publishing the Supreme Court, at page 568, points out that section 7(d) (Ill. Rev. Stat. 1947, ch. 48, par. 223(d),) which contained the exact language of section 604, provided that the period of ineligibility ended upon termination of the "stoppage of work" and did not require that the unemployment be involuntary.

For the reasons herein set forth, the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.