2023 IL App (1st) 220185-U

No. 1-22-0185

Second Division
March 28, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| RELIABLE ASPHALT CORPORATION, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21 MI 450075 |
| | ) | |
| CITY OF CHICAGO DEPARTMENT OF | ) | |
| PUBLIC HEALTH, and CITY OF CHICAGO | ) | |
| DEPARTMENT OF ADMINISTRATIVE | ) | |
| HEARINGS, | ) | |
| | ) | |
| Defendants. | ) | Honorable |
| | ) | Joseph M. Sconza |
| (City of Chicago Department of Public | ) | Judge, presiding. |
| Health, Defendant-Appellant). | ) | |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the City of Chicago Department of Public Health proved by a preponderance of the evidence that Reliable violated section 11-4-760(d) of the Municipal Code of Chicago, the decision of the Department of Administrative Hearings sustaining the violation was not against the manifest weight of the evidence.

¶ 2    This case comes to us on review of a decision of the City of Chicago Department of Administrative Hearings (DOAH). On June 9, 2020, defendant-appellant, City of Chicago Department of Public Health (CDPH), issued a citation to plaintiff-appellee, Reliable Asphalt Corporation for a violation of §11-4-760(d) of the Chicago Municipal Code (Code) and assessed a $5,000 fine against Reliable for the violation. Reliable sought administrative review of the decision. Following a hearing on the merits, the DOAH found in favor of the CDPH and imposed a $1,500 fine against Reliable. Reliable appealed the DOAH's decision to the Circuit Court of Cook County. The circuit court reversed the DOAH's decision and CDPH appealed. For the reasons that follow, we reverse the judgment of the circuit court and affirm the decision of the DOAH.

¶ 3                                    I. BACKGROUND

¶ 4    Reliable operates a construction and demolition recycling facility and asphalt plant at 3741 South Pulaski Road in Chicago, Illinois. There is no dispute that Reliable's operations are subject to the Chicago Environmental Protection and Control Ordinance (Chicago Municipal Code § 11-4-010 *et seq.*). Section 11-4-760 of the Code, the provision at issue in this appeal, provides in relevant part:

> "Handling and storage of material susceptible to becoming windborne.
>
> (a) *Material handling*: No person shall cause or permit the use, handling, loading, unloading, storing, depositing, or scattering of any substance or material that may become airborne or be scattered by the wind without taking reasonable precautions to minimize windborne articulate matter.
>
> ***

- 2 -

(d) *Track out onto the public way*: Owners and operators of, and any general contractor or subcontractor working at, any property shall ensure that mud, dirt, and other debris is not tracked on the public way. The Commissioner or the Commissioner of the Department of Streets and Sanitation may require property owners, operators, general contractors and subcontractors to employ a street sweeper, water truck, truck wash, or other device to control the track out of mud, dust, and debris onto the public way.

(e) *Rules and regulations*. The commissioner is authorized to promulgate additional rules and regulations for the proper management of any substance or material that may become airborne or be scattered by the wind.

(f) *Enforcement*. The department of health and the department of streets and sanitation are authorized to enforce the provisions of this section." Chicago Municipal Code § 11-4-760 (amended Nov. 21, 2017).

¶ 5    On June 9, 2020, around 12:30 p.m., Donavan Tietje, a senior environmental inspector for CDPH issued a citation to Reliable, citing violations of section 11-4-760(a) of the Code, for failing to take reasonable precautions to prevent material from becoming windborne, and section 11-4-760(d), for failing to ensure that debris is not tracked onto the public way. The citation was delivered to a representative of the company at the site. Following a series of continuances, on May 6, 2021, the matter proceeded to a hearing before the DOAH. Prior to proceeding, CDPH non-suited the charge for failing to take precautions to prevent material from becoming windborne pursuant to section 11-4-760(a). Thus, the hearing proceeded only on the charge of a violation of section 11-4-760(d), failure to ensure that debris is not tracked onto the public way.

¶ 6    The following testimony was adduced at the hearing.

¶ 7 Tietje testified that he has been employed as an environmental inspector for CDPH for 1½ years. On June 9th, he received a call from his supervisor that there was "truck [*sic*] out" and some gravel on the road next to Reliable's site. Tietje then travelled to the site to determine whether Reliable was producing too much dust. Upon arriving, the first thing Tietje did was to check Pulaski Road and the bridge above the site. While there, he observed a truck leaving Reliable's site driving onto Pulaski Road, kicking up dust that was spilling out onto the roadway, leaving dust on the ground and in the air, and tracking out rocks and debris.

¶ 8 Tiete testified concerning photographs taken by him on June 9 during the site visit. The photographs were admitted into evidence, without objection. The first photograph, exhibit 1, shows the truck he saw leaving the site and spilling dust out onto the roadway. The second photograph, exhibit 2, "shows dirt and gravel leaving the exit ramp spilling onto Pulaski Road." Photographs identified by Tietje as " C and D," taken by Tietje from inside a vehicle on Pulaski Road, are of the exit ramp and shows the truck leaving Reliable's site, heading south kicking up dust and track out following, as well as "the dust, the rocks and debris."

¶ 9 After making "a judgment call" on whether it was too much dust, Tietje went down to the site and talked to Mr. Hoff, his usual point of contact at the site.[1] He informed Mr. Hoff that he would be writing a citation.

¶ 10 On cross-examination, Tietje testified that he saw a street sweeper on Pulaski Road and also a water truck on the facility's property. He stated that he did not photograph the street sweeper because he did not want to stop traffic. When subsequently asked if he had taken a photo of the "street sweeper on site," he testified that he had not.

---

[1] Mr. Hoff's first name does not appear in the record.

¶ 11    Reliable presented testimony of Joshua Quinn, vice president of safety, environmental services, and compliance for Southwind Industries, the parent company of Reliable. Quinn testified that he visits the Reliable site on a routine basis, weekly or biweekly, to visit with employees, to observe site conditions, and to ensure that the company is in compliance with permit conditions and safety and health policies and procedures.

¶ 12    Quinn testified that the site is primarily used for recycling concrete and asphalt for return to the economic mainstream. Reliable also handles construction fill for transfers to another facility and it operates an asphalt plant as a joint venture. The site uses multiple front-end loaders responsible for feeding the processing plant and loading finished product into customer trucks and managing fill coming into the site. These activities have the potential to produce wind-borne materials. Thus, Reliable employs various measures to control such pollution.

¶ 13    According to Quinn, the measures consist of water sprayers near processing, which apply fine mists of water to minimize the potential for dust to become wind-borne; a water truck that applies water throughout the site to manage dust; water sprinklers along the facility's internal roadways; and a street sweeper used at the plant.[2]

¶ 14    Quinn additionally testified that Reliable has personnel stationed near the site to observe trucks as they leave the facility to ensure there are no loose materials that could leave the site. The employees are in position to sweep any materials that may be loose off the trucks or have become loose on the roadway so they can be managed. The area surrounding the site is occupied primarily by industrial-type businesses. Quinn testified that he notices a fair amount of truck traffic on the street between the hours of 12 and 1 p.m.

_____

[2] Photographs of the water sprayers and the water truck were admitted into evidence over CDPH's objection that there was no testimony that the devices were at Reliable's site on June 9th.

¶ 15    On cross-examination, Quinn testified that he was not at the site on June 9, 2020, the day that Tietje issued the citation.

¶ 16    Jerry Guerra, site supervisor and senior operator at Reliable, also testified. Guerra oversees day-to-day operations at the site. In addition to running the equipment, he oversees the cleanliness of the site in addition to taking care of dust. Guerra works at the plant at least five days a week and was on site on June 9. He additionally testified concerning the various measures Reliable takes to control dust created by the processing work at the plant such as a water truck, sprinklers, and a sweeper truck. The water truck is constantly running throughout the entire yard. The sweeper sweeps the yard and Pulaski Road, and the sprinkler system sprays throughout the entire site. Guerra testified that these measures greatly reduce the amount of dust production from the plant and also reduce or prevent track out that may go onto the street outside the plant on Pulaski. It was Guerra's testimony that these operations were "ongoing" when he was at the plant on June 9.

¶ 17    Following Guerra's testimony, CDPH recalled Tietje who testified that he had seen the various mitigation efforts in place at Reliable's facility on June 9. However, according to Tietje, those measures were insufficient to ensure that dirt and dust did not go out onto the public way on Pulaski Road.

¶ 18    Following the close of the evidence, Reliable argued that it should not be found liable based on the measures the company had in place to mitigate pollution. Further, Reliable argued that CDPH had not proven that the debris tracked out onto Pulaski Road was from Reliable's facility. At the conclusion of closing statements, the administrative law judge stated that it had reviewed the ordinance, considered and "weighed the evidence, testimony," and the "credibility of the witnesses and arguments presented." The administrative law judge concluded that CDPH had proven liability by a preponderance of the evidence. In response to a question from the

administrative law judge concerning CDPH's proposed $5,000 fine, Reliable's counsel offered that "this does not appear to be an extreme violation of the code" and, in light of the several mitigation factors, requested a lesser fine. The DOAH then imposed a $1,500 fine for the violation and court costs of $40 and entered judgment on its finding.

¶ 19    Reliable sought administrative review in the circuit court. In its complaint, Reliable asserted that the DOAH's decision was against the manifest weight of the evidence because (1) CDPH failed to prove that Reliable failed to ensure that mud, dirt, and other debris was not tracked out from their site onto the public way, and (2) CDPH failed to prove that Reliable did not comply with section 11-4-760(d) of the Code. Reliable filed its Specification of Errors, to which CDPH responded and Reliable then replied. In its Specification of Errors, Reliable argued that the ordinance was impermissibly vague.

¶ 20    Following a hearing, the circuit court entered an order reversing the DOAH's judgment and ordered the refund of Reliable's court costs.

¶ 21    This appeal followed.

¶ 22                                  II. ANALYSIS

¶ 23    The CDPH asserts that the circuit court erred in reversing the decision of the DOAH. It maintains that the DOAH's determination that Reliable violated section 11-4-760(d) is not against the "manifest weight of the evidence." Not surprisingly, Reliable takes the contrary position with respect to the DOAH's decision and asserts that it was "clearly erroneous."

¶ 24    The parties not only disagree with the quantum of evidence required to find a violation, but also with the standard of review. Reliable posits that an agency's determination of the legal effect of a given set of facts presents a mixed question of fact and law subject to the clearly erroneous standard of review. It maintains that under these standards, this court should uphold the circuit

court's reversal of the DOAH's decision and find that it was clearly erroneous. The CDPH asserts that "[o]n manifest weight review, which is applicable here to the factual basis for DOAH's determination of liability," the circuit court's reversal was in error.

¶ 25                    A. Standard of Review

¶ 26    Final decisions of administrative proceedings, such as those of the DOAH, are reviewed pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)). Municipal Code of Chicago, Ill. § 2-14-102 (added April 29, 1998). The principles governing our review of such proceedings are well settled and the parties have correctly recited them in their respective briefs. They diverge only with respect to which of the standards of review, clearly erroneous or manifest weight, applies in this case. In *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191 (1998), our supreme court identified three types of questions that a court may encounter on administrative review of an agency decision: questions of fact, questions of law, and mixed questions of fact and law. Consequently, the applicable standard of review depends on the type of question presented. *American Federation of State, County & Municipal Employees, Council 31 v. State Labor Relations Board*, 216 Ill. 2d 569, 577 (2005) (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)). We briefly discuss below the three types of questions, not only because they inform the scope of our review, but also because the parties appear to misperceive which is applicable here.

¶ 27    In cases that present a mixed question of law and fact, the clearly erroneous standard, advocated by Reliable, applies. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006) (citing *AFM Messenger*, 198 Ill. 2d at 391-95). A mixed question of law and fact is one that "involves an examination of the legal effect of a given set of facts." *City of Belvidere*, 181 Ill. 2d at 205. A mixed question is one " 'in which the historical facts are admitted or

established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' " *AFM Messenger*, 198 Ill. 2d at 391 (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n. 19 (1982)). Review under the clearly erroneous standard is " 'significantly deferential.' " *Id.* at 393 (quoting *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 623 (1993)). The level of deference is based not on the superiority of the trial judge's position to make determinations of credibility, but instead is accorded based on the " 'expertise' that comes with 'experience' as the trial judge fulfills his or her major role as fact finder." *Id.* at 394 (citing *Anderson v. City of Bessemer City*, 470 U.S 564, 574 (1985)). An administrative agency's decision is deemed " 'clearly erroneous' " when the reviewing court is " 'left with the definite and firm conviction that a mistake has been committed.' " *Id.* at 395 (quoting *United States v. United States Gypsum Co.*, 333 U. S. 364, 395 (1948)).

¶ 28    In contrast to mixed questions, rulings on questions of fact will be reversed only if against the manifest weight of the evidence, the standard for which CDPH advocates. *Marconi*, 225 Ill. 2d at 534. An administrative agency's factual determinations are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *City of Belvidere*, 181 Ill. 2d at 205.

¶ 29    Neither party argues for *de novo* review, the standard applicable when the historical facts are admitted, but there is a dispute as to whether the governing legal provisions were correctly interpreted by the administrative body. See *Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011). *De novo* review has been characterized as "independent and not deferential." *Id.*

¶ 30    Here, the facts are clearly disputed. The CDPH offered testimony that Tietje observed dust and track out from the site. He additionally testified that Reliable's mitigation measures were insufficient to have any diminishing effect. In rebuttal, Reliable offered the testimony of Guerra,

who was on site at the time of the investigation. Guerra offered that mitigation measures at the site were ongoing and operational on June 9; and that they greatly reduce the amount of dust production from the plant as well as track out that might go onto the street. The issue here on appeal is whether the disputed facts violate the terms of the ordinance. Thus, the appropriate standard of review is against the manifest weight of the evidence, which is the most deferential of the three.

¶ 31    We are aware of Reliable's argument on administrative review in which it urges that the ordinance is unconstitutionally vague, an issue which would ordinarily prompt *de novo* review on that issue. See *Wilson v. County of Cook*, 2012 IL 112026, ¶ 14 (whether an ordinance is unconstitutional is reviewed *de novo*.). Where the statute, or in this case the ordinance, contains legal terms requiring interpretation, a question of law is presented. See *City of Belvidere*, 181 Ill. 2d at 205 (stating that the Board's finding concerned a question of law where "the phrase 'wages, hours and other conditions of employment' " was a legal term that required interpretation); see also *AFM Messenger*, 198 Ill. 2d at 392 (stating that the Department's finding concerned a question of law because the three statutory requirements for independent contractor status set forth in the statute are comprised of legal terms and concepts requiring interpretation). However, the ordinance at issue here is clear; there are no legal terms that require interpretation. In any case, for reasons that we detail later, we do not reach Reliable's constitutional challenge.

¶ 32    Having determined that the applicable standard of review is manifest weight, we set forth those principles which further define the nature and scope of our review. In administrative review cases, the role of the reviewing court is to review the decision of the administrative agency as opposed to the determination of the circuit court. *Marconi*, 225 Ill. 2d at 531. "An administrative agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). In

examining those findings, a reviewing court neither reweighs the evidence nor do we substitute our judgment for that of the agency. *Id.* Instead, our role is "limited to ascertaining whether such findings of fact are against the manifest weight of the evidence" which we may find only if the opposite conclusion is clearly evident. *Id.*

¶ 33    We turn next to the merits of the issues properly preserved and presented for our review. Before doing so, we dispose of questions raised in the circuit court and here on appeal regarding the constitutionality of the ordinance.

¶ 34                              B. Constitutionality of the Ordinance

¶ 35    On administrative review in the circuit court, Reliable challenged the ordinance as being unconstitutionally vague. The circuit court, although apparently in agreement, announced that its ruling was not based on Reliable's constitutional challenge. Here on review, the CDPH initially argues that the vagueness issue is forfeited for Reliable's failure to first raise the argument in the proceedings before the DOAH, and, in the alternative, that the language of the ordinance is clear. In it response brief, Reliable offers no challenge to the CDPH's forfeiture claim and instead argues that, "[d]espite not bringing a constitutional argument at the DOAH hearing [the] ordinance is unconstitutionally vague." Then, although having apparently conceded forfeiture, and further noting that the circuit court expressly declined to rule on that basis, Reliable presses its vagueness challenge here on appeal.

¶ 36    Out of an abundance of caution, we have reviewed the record of the administrative proceedings and find no challenge by Reliable, or anyone else for that matter, to the ordinance's constitutionality at that stage of the proceedings. We believe it to be settled law that an argument, issue, or defense not presented in an administrative hearing is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review. See *Leffler v.*

*Browning,* 14 Ill. 2d 225, 227-29 (1958). The rule is "based on the demands of orderly procedure and the justice of holding a party to the results of his or her conduct where to do otherwise would surprise the opponent and deprive the opponent of an opportunity to contest an issue in the tribunal that is supposed to decide it." *Cinkus*, 228 Ill. 2d at 213 (citing *Robert S. Abbott Publishing Co. v. Annunzio,* 414 Ill. 559, 565 (1953). Further, it is insufficient to raise an issue for the first time in the circuit court. *Id.* The rule of procedural default specifically requires the issue be raised first before the applicable administrative tribunal. *Id.* The reason and logic behind this rule are clear where the circuit courts act as the first-tier courts of review. *Id.*

¶ 37 The rule applies with equal force to constitutional challenges. Our supreme court has advised that "a party in an administrative proceeding should assert a constitutional challenge on the record before the administrative tribunal, because administrative review is confined to the evidence offered before the agency." *Id.* at 214-15 (citing cases). Even though an administrative agency is without authority to declare a statute unconstitutional, the practice of requiring the challenged statute, or in this case the ordinance, to be raised in that venue avoids piecemeal litigation, and more importantly, allows opposing parties a full opportunity to refute the constitutional challenge. *Id.*

¶ 38 Because Reliable forfeited the vagueness challenge, we decline further discussion on the issue. We turn our attention instead to a review of the DOAH's findings of fact and a determination of whether its decision was against the manifest weight of the evidence.

¶ 39 C. The DOAH'S Findings of Fact

¶ 40 CDPH argues that the DOAH's determination that Reliable violated section 11-4-760(d) is not against the manifest weight of the evidence and, therefore, the circuit court's reversal was error. Throughout its brief, Reliable attempts to frame its argument in such a manner as to invoke

application of the clearly erroneous standard, arguing that our review involves questions of law regarding the interpretation of the ordinance. As framed by Reliable "[t]he question of law is whether CDPH is required, under the ordinance to establish by a preponderance of the evidence that Reliable caused the track out in the middle of Pulaski Road." Accordingly, Reliable argues that the DOAH's determination that it violated section 11-4-760(d) was "clearly erroneous."

¶ 41    We agree with Reliable that in an administrative proceeding the burden of proof is the lesser civil burden of a preponderance of the evidence. See *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 204 (1993). We disagree that whether the CDPH met that burden presents as a question of law. Preponderance of the evidence relates to the quantity of evidence necessary to satisfy one's burden of proof. The concept has been defined as " '[e]vidence which is of greater weight or more convincing than the evidence which is offered in opposition.' " *In re Aniylah B.*, 2016 IL App (1st) 153662, ¶ 41 (quoting *Board of Education of Education of the City of Chicago v. Johnson*, 211 Ill. App. 3d 359, 364 (1991)). More simply stated, "[a] proposition is proved by a preponderance of the evidence when the proposition is more probably true than not true." *In re Terry H.*, 2011 IL App (2d) 090909, ¶ 14. Thus, whether a litigant has met his or her burden of proof involves an assessment of the quantity of evidence presented. Regardless of which standard of review applies, the plaintiff in an administrative proceeding bears the burden of proof and will be denied relief if he or she fails to sustain that burden. *Marconi*, 225 Ill 2d. at 532-33.

¶ 42    Having concluded that the appropriate standard of review here is manifest weight, we need not further engage in discussion concerning the clearly erroneous standard. Properly framed, the issue before us is whether, based on all of the evidence presented, the DOAH's finding that the CDPH met its burden of proof that Reliable failed to ensure against track out, in violation of the ordinance, was against the manifest weight of the evidence.

¶ 43    We agree with Reliable that even under the manifest weight of the evidence standard, the reviewing court does not automatically approve an agency decision merely because the agency heard witnesses and made findings. Quoting *Chase v. Department of Professional Regulation*, 242 Ill. App. 3d 279, 285 (1993), Reliable correctly notes that this court has the " 'duty to examine the evidence in an impartial manner[.]' " We hasten to add, as we have stated earlier, however, that an agency's findings and conclusions on questions of fact are held to be *prima facie* true and correct. *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 15. Further "[w]hen a court reviews an agency's factual findings, the court will not reweigh the evidence or substitute its judgment for that of the agency." *Id.* We, instead, determine whether the agency's findings are against the manifest of the evidence. *Id.*

¶ 44    Reliable contends that there were other possible sources of the track out onto Pulaski Road. Pointing to Tietje's testimony and the photo exhibits, Reliable argues that the photos do not show that the dirt trails emanated from Reliable's exit ramp. Further, Reliable maintains that an additional photo shows the track out going straight down Pulaski Road, as opposed to at an angle trailing from Reliable's facility. Pointing to Quinn's testimony, Reliable argues that there were several industrial operations nearby, including a maintenance yard, an electrical distribution facility, a truck-trailer facility, several contractor yards, and a junk yard near Reliable's facility. Further, Reliable points out that Tietje admitted in his testimony that there was an active demolition project occurring down the street from Reliable's facility. Thus, Reliable maintains that the testimony of the witnesses, as well as the photographs, establish that CPDH failed to establish that the track out on Pulaski Road was caused by Reliable instead of one of the many other potential sources. Reliable maintains that the fact that Tietje observed tracked out mud, dirt, or debris on Pulaski Road cannot be sufficient to establish a violation considering the other potential sources.

¶ 45    We note initially that the "mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings." *Abrahamson v. Illinois Department of Professional Regulations*, 153 Ill. 2d 76, 88 (1992). Reversal is only appropriate where, after viewing the evidence in the light most favorable to the agency, we are able to conclude that no rational trier of fact would have agreed with the agency (*Chief Judge of Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 514 (1992)) and that the opposite conclusion is clearly evident (*Windsor Clothing Store v. Castro*, 2015 IL App (1st) 142999, ¶ 26).

¶ 46    Here, the DOAH heard testimony from Tietje that when he arrived at the site, he observed and photographed the dust coming from Reliable's facility going out onto Pulaski. Tietje observed a truck leaving Reliable's site and driving onto Pulaski, and in the process, tracking dust, debris, and rocks onto the roadway. Quinn was not at the site the date of the investigation and thus, could offer no testimony concerning Reliable's activities on that date. Although Guerra testified regarding operation of the mitigation measures, he offered no testimony to rebut Tietje's testimony regarding his observations of the truck leaving the site causing the track out. Further, the photographs taken by Tietje and admitted without objection at the hearing, served to bolster Tietje's testimony. Contrarily, Reliable's photographs of the mitigation devices, admitted over CDPH's objection bolstered only Quinn and Guerra's testimony that the devices existed.

¶ 47    Based on the evidence presented at the hearing, we find that the CDPH met its burden of proof. The DOAH's finding that Reliable failed to ensure against track out onto Pulaski Road was not against the manifest weight of the evidence.

¶ 48    Reliable argues, nonetheless, that its pollution control measures prove conformity with the requirements under the ordinance. Reliable notes that testimony and evidence of control measures

used to minimize and address windborne materials was presented. Additionally, Reliable offers that two witnesses testified that it utilized plant processing water sprayers that spray areas where dust may be produced; a water truck that sprayed the internal roadways where customers' trucks would exit the site; internal roadway sprinklers; and a street sweeper. These measures, Reliable maintains, are the exact measures provided in the second sentence of the ordinance. From there, Reliable sets forth the principles for statutory interpretation and then argues that the issue of how Reliable is required to " 'ensure' " that mud, dirt, and other debris is not tracked onto the public way under the ordinance raises a question of law requiring interpretation of the ordinance. See Chicago Municipal Code § 11-4-760(d).

¶ 49 Reliable's argument is absolutely devoid of any merit. First of all, statutory construction of the ordinance at issue here is unnecessary as we find the language is clear and unambiguous. See *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995) (where a statute is clear and unambiguous, a court must enforce the law as enacted without considering other aids of construction.). Second, the fact that the ordinance allows the Commissioner of Streets and Sanitization to require property owners to employ pollution control measures neither renders the track out provision, included within that same paragraph, ambiguous nor does it negate it.

¶ 50 At the close of all the evidence, the administrative law judge stated that it had reviewed the ordinance in the matter, considered and weighed the evidence, testimony, and the credibility of the witnesses and arguments presented, and determined that CDPH had proven liability by a preponderance of the evidence. We find no basis upon which we may reasonably disagree.

¶ 51                                   III. CONCLUSION

¶ 52     Having reviewed all of the evidence presented to the DOAH, we hold that the DOAH's decision is not against the manifest weight of the evidence. Accordingly, we reverse the judgment of the circuit court and affirm the decision of the DOAH.

¶ 53     Circuit court judgment reversed; DOAH decision affirmed.