COMMONWEALTH EDISON COMPANY, Plaintiff-Appellee, *v.* THE DEPARTMENT OF LOCAL GOVERNMENT AFFAIRS *et al.*, Defendants (The Department of Local Governmental Affairs, Defendant-Appellee; Zion Park District *et al.*, Defendants-Appellants).

Second District   No. 2—83—0725

Opinion filed July 27, 1984.

Ralph E. Loomis, Frederic S. Lane, and Maureen Martin, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellee Department of Local Government Affairs.

Paul F. Hanzlik, John W. Treece, and Michael F. Kerr, all of Isham, Lincoln & Beale, of Chicago, for appellee Commonwealth Edison Company.

JUSTICE UNVERZAGT delivered the opinion of the court:

Commonwealth Edison Company (Edison) owns a nuclear steam electric generating station located in Zion Township, Lake County, commonly called "Zion Station."

Zion Park District, Zion-Benton Township High School District No. 126, Zion Public School District No. 6 and Zion Township (taxing bodies) made an assessment complaint to the Department of Local Government Affairs[1] (Department) claiming that Zion Station was under-assessed for real estate taxes for 1976. The taxing bodies complained specifically of the assessment of five pollution control facilities located at the Zion Station.

The Department conducted a hearing and rendered its decision adopting the position of the taxing bodies. Edison sought administrative review in the circuit court of Lake County. That court reversed the Department's assessment and reinstated an earlier Department assessment. It is from this order which the taxing bodies appeal. The Department was granted leave by this court to adopt as its own Edison's brief in this appeal.

---

[1]This department is now known as the Department of Revenue.

The decision of the circuit court altered the Department's original 1976 assessment for property tax purposes of five certified pollution control facilities[2] (facilities) located at Zion Station.

The five facilities were certified for tax purposes in 1975 as pollution control facilities by the Pollution Control Board (PCB) as provided in section 21a—4 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1975, ch. 120, par. 502a—4). Facilities which are so certified are removed from local tax assessment rolls, and receive favorable tax treatment under section 21a—1 of the Act; *i.e.*, "pollution control facilities should be valued * * * in relation to 33⅓% of the fair cash value of their economic productivity to their owners." (Ill. Rev. Stat. 1975, ch. 120, par. 502a—1.) The facilities were valued for 1976 tax purposes under section 21a—3 of the Act by the Department as authorized by section 21a—4 of the Act (Ill. Rev. Stat. 1975, ch. 120, pars. 502a—3, 502a—4).

Section 21a—3 provided that the Department take several factors into consideration when determining 33⅓% of the fair cash value of the certified pollution control facilities:

(1) The actual or probable net earnings attributable to the facilities in question, capitalized on the basis of their productive earning value to their owner;

(2) The probable net value which could be realized by their owner if the facilities were removed and sold at a fair, voluntary sale, giving due account to the expense of removal and condition of the particular facilities in question (basically the salvage value); and

(3) Such other information as the Department may consider as bearing on 33⅓% of the fair cash value, to their owner, of the pollution control facilities in question, consistent with the principles set forth herein. Ill. Rev. Stat. 1975, ch. 120, par. 502a—3.[3]

---

[2]The five facilities are: radioactive liquid waste system; Amertap system; large diameter pipes from condensors into Lake Michigan; air flow control system; excess building structures.

[3]We note here that the validity of this section was very recently upheld in the face of a constitutional attack on the basis that the section created an unlawful exemption from taxation contrary to the provisions of section 6 of article IX of the Illinois Constitution of 1970. (*People ex rel. Bosworth v. Lowen* (1984), 102 Ill. 2d 242; Ill. Const. 1970, art. IX, sec. 6.) *Inter alia*, the supreme court agreed with the appellate court that the scheme provided under section 21a—3 is a method of valuation and does not create an unlawful exemption from taxation. The appellants there had also argued that the income from the pollution control facilities produced by virtue of their inclusion in the rate bases of the defendants, both public utilities, was improp-

On June 15, 1976, the Department assessed the value of the five facilities at $374,265. That valuation included, *inter alia*, approximately two-thirds of the concrete walls, doors, floors, ceilings and windows of the Zion Station which had been certified as pollution control facilities by the PCB on the theory they constituted a containment vessel. These various components are termed "excess structures." The taxing bodies filed with the Department a petition for review and correction of the assessment, contending that in addition to net salvage value, the facilities also had "productive earning value" within the meaning of section 21a—3 because they were included in Edison's rate base and earned the same return as all of Edison's other assets.

At the hearing held on August 24, 1976, the taxing bodies presented testimony which established that the pollution control facilities are included along with other assets in Edison's rate base and, thus, they receive the same rate of return as assets which are not certified as pollution control facilities. Edison advanced its position at the hearing that the facilities were not "economically productive" within the meaning of the statute because "productive earning value" refers to the production of electricity and the pollution control facilities do not produce electricity.

In its January 12, 1977, decision increasing the valuation of the facilities from $374,265 to $24,870,240, the Department's hearing officer stated in his opinion:

> "[Edison's] position was that their interpretation of *** income production was that the facilities did not produce electricity but were present only for public benefit. While the intent of the statute may have been to prevent excessive taxation on facilities that were strictly for public benefit, we do not believe the facilities of the Power Company fit that interpretation. The return to the Power Company is just the same on this investment as it is on the rest of the plant."

The Department then issued its revised assessment as we have noted. Edison filed its petition for administrative review on February

---

erly disregarded. Citing *Commonwealth Edison Co. v. Department of Local Government Affairs* (1980), 86 Ill. App. 3d 768, 773, *aff'd* (1981), 85 Ill. 2d 495, the supreme court held section 21a—3 does not provide for an exemption of property from taxation. "It is rather a recognition by the General Assembly that pollution-control facilities are not necessarily economically productive and should be valued for tax-assessment purposes on the basis of their productive earning capacity. Such treatment reduces the tax burden on those required to build such facilities and encourages their installation in other places." *People ex rel. Bosworth v. Lowen* (1984), 102 Ill. 2d 242, 247-48.

14, 1977, contending in substance that the Department decision was contrary to the provisions of section 21a—3 because the facilities did not produce electricity and were not "economically productive." During the pendency of the instant administrative review, the parties stipulated that the cause be stayed "pending a final resolution by an Illinois court of last resort in [Edison's] appeal from an order of the Circuit Court of Cook County, adjudicating the same issues present in this cause against [Edison]; that appeal is now pending in the cause entitled *Commonwealth Edison Company*, Appellant, v. *Department of Local Government Affairs, et al.*, Appellees, Appellate Court of Illinois, First District, General No. 79—1520."

The supreme court's decision in that case was filed on May 22, 1981. (*Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495.) There, the supreme court affirmed the judgment of the appellate court reversing a judgment of the circuit court of Cook County entered upon administrative review. The circuit court affirmed a 1977 tax assessment made by the Department of 12 certified pollution control facilities in Cook County. The Department had assessed those Edison facilities at 33⅓% of their present cash value. It was Edison's position that the Department had ignored information provided by it on Department tax forms which indicated that the facilities did not have any productive earning value under section 21a—3. Specifically, the Department's assessment evidenced an ignorance of Edison's negative response as to each of the facilities to the question: "Does the control facility have any enhancement to the manufactured product or is there a by-product derived from the control facility?" Edison pointed out that the pollution control facilities owned by industries other than public utilities were assessed at rates between one-half of one percent to three percent of each facility's present cash value. Edison had presented testimony at the Department hearing that its facilities not only did not aid in the production of electricity, but in fact reduced operating efficiencies. The Department confirmed its original assessment, finding that Edison's facilities produce an extra price increment on the electricity sold by virtue of their inclusion as capital investments in the base upon which Edison's rates are calculated.

On administrative review, the circuit court affirmed the Department's assessment, but the appellate court reversed. (*Commonwealth Edison Co. v. Department of Local Government Affairs* (1980), 86 Ill. App. 3d 768.) The Zion taxing bodies, appellants here, participated in that case as *amici curiae*. In considering the appeal, the appellate court determined it had to decide whether the inclusion of the cost of

a pollution control facility in a regulated company's rate base renders that facility "economically productive" within the meaning of the terms used in sections 21a—1 and 21a—3 of the Act. Its decision was that the construction of the statutes urged by the Department was contrary to the legislative intent to encourage expenditures that would result in environmental improvement and to soften the tax burden on those who are required to make such expenditures. The appellate court noted that although its decision did not depend on it, a 1979 amendment to section 21a—3, effective January 1, 1980, clarified the legislature's prior intent as to when earnings may be attributed to a pollution control facility; to-wit:

> "For the purposes of this Act, earnings shall be attributed to a pollution control facility only to the extent that the operation thereof results in the production of a commercially saleable by-product or increases the production or reduces the production costs of the products or services otherwise sold by the owner of such facility. ***
>
> This amendatory Act of 1979 is not intended to nor does it make any change in the meaning of any provision in this Section but is intended to remove possible ambiguities, thereby confirming the existing meaning of this Section in effect prior to the effective date of this amendatory Act of 1979." Ill. Rev. Stat. 1983, ch. 120, par. 502a—3.

The court observed that the question posed by the Department itself on its tax form ("Does the control facility have any enhancement to the manufactured product or is there a by-product derived from the control facility?") was consistent with the prior intent of the legislature, as presently expressly stated in the amendatory act of 1979.

The supreme court affirmed, noting that the sole issue was the proper method of assessing Edison's pollution control facilities under the Act. (*Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495.) The Zion taxing bodies again participated in that case as *amici curiae*. The Department did not dispute Edison's assertion there that the pollution control facilities in question do not produce a product or service or reduce Edison's cost of production in any manner. (85 Ill. 2d 495, 498.) The Department also conceded that the 1979 amendment to section 21a—3 codified the position taken by Edison throughout the litigation; to-wit: " 'Only when [pollution control facilities] increase the quantity of goods or services sold by their owner, reduce production costs or enhance production, are they to be assessed as productive equipment.' " 85 Ill. 2d 495, 501.

The Department argued the amendment could not be used to determine the meaning of disputed terms because to do so would be to allow the General Assembly retroactively to alter the meaning of previously enacted statutory language.

The supreme court rejected the Department's position and affirmed the appellate court's judgment. It noted that although the passage of an amendment usually raises a presumption that the legislature intended to change the substantive law, the presumption is rebutted where the circumstances show the amendment was intended to clarify previously ambiguous language. (85 Ill. 2d 495, 501, 505.) The supreme court determined that the presumption did not even arise in that case, however, acknowledging the ambiguity of the terms "economic productivity" and "productive earning value" and the express language of the amendment itself that its intent was "to remove possible ambiguities, thereby confirming the existing meaning" of the statute prior to the amendment.

As a result of the supreme court's decision, Edison here sought, and the taxing bodies concurred in, a remand of the cause to the Department for reassessment in accordance with the supreme court's decision. The Department then issued assessments which were slightly lower than the original 1976 assessments, but which were substantially lower than the Department's 1977 assessments. The several assessments are illustrated in the chart below.

| Facility Certification No. | June 1976 Assessment | January 1977 Assessment | April 1982 Assessment |
|---|---|---|---|
| 21RA-73-12 | $ 6,450 | $ 403,768 | $ 6,100 |
| 21RA-73-13 | 2,450 | 189,498 | 2,800 |
| 21RA-73-14 | 60,200 | 4,275,269 | 64,100 |
| 097-200-AAH-1 | 3,210 | 249,334 | 3,700 |
| 097-200-AAH-2 | 301,955 | 19,752,371 | 296,300 |
| | $374,265 | $24,870,240 | $373,000 |

The taxing bodies sought review of these new assessments before the Department, but the Department determined that it would "not be appropriate" to reopen the matter of the assessments.

The taxing bodies had requested review of the revised assessments on the basis (1) the facilities were economically productive; (2) the assessments reflected salvage value computed as a percentage of "net" plant rather than "gross" plant, i.e., the Department used 1.5% of the cost less depreciation of each facility rather than 1.5% of the cost only; and (3) some of the facilities certified as pollution control facilities by the PCB were not really pollution control facilities. After the Depart-

ment refused to review the matter again, the court received memoranda of law from the parties and heard arguments and issued its memorandum decision on July 13, 1983, reinstating the Department's original 1976 assessments which had precipitated the taxing bodies' assessment complaint.

The taxing bodies raise these issues on appeal:

(1) whether the circuit court abused its discretion in not remanding this case to the Department of Revenue for further proceedings; (2) whether the circuit court erred in reinstating the Department's preliminary 1976 assessments; and (3) whether the circuit court erred in concluding that the Zion taxing bodies had waived their right to contest the valuation of the so-called "excess structures" pollution control facility at the Zion Station.

ISSUE I

#### FAILURE TO REMAND

■■ In view of the fact the Department's original assessment of the facilities was made prior to the time the Supreme Court clarified the ambiguity of the phrases "economic productivity" and "productive earning value" in sections 21a—1 and 21a—3, the taxing bodies assert the existing record lacks substantial evidence on whether Edison's pollution control facilities are truly "economically productive," and it was, therefore, an abuse of the court's discretion not to remand the cause for rehearing and reassessment. They point out the 1979 amendment to section 21a—3—although decidedly contrary to their position below that the facilities were economically productive by virtue of their inclusion in the rate base—affirmatively provides that pollution control facilities may have productive earning value to the extent they increase production, reduce production costs, or produce a byproduct. Thus, they urge the cause should have been remanded to the Department for further fact-finding as to these three criteria. The taxing bodies assert, without authority, that the inadequacy of the record arose as the result of the legislative amendment, and was not due to any failure of the proof on their part. They further assert that unless they are granted a remandment of the cause, they will effectively have been denied their procedural due process right to "a full, fair and impartial hearing ***," and an opportunity to present evidence on the "after-the-fact 'clarified' standard" for economic productivity.

Edison counters that the taxing bodies are not entitled to a *de novo* hearing for the purpose of presenting evidence on theories of productivity which could have been asserted earlier but were not. It points out

the taxing bodies clearly relied on the theory of economic productivity of the facilities due to their inclusion in Edison's rate base. Having lost on that theory, Edison argues that the taxing bodies cannot now assert a different theory. Edison disputes the taxing bodies' contention that the record is incomplete or inadequate on the issue of the economic productivity of the facilities in question, and refers to the evidence in the record elicited by it, which was unrebutted by the taxing bodies, that the pollution control facilities produce no commercially saleable byproduct and, not only do the pollution control facilities not reduce production costs, the operation of the facilities increases the costs attributable to the production of electrical energy. Consequently, Edison argues it was within the trial court's discretion to deny a remand to the Department of Revenue for further hearing since the Department's 1976 assessments were consistent with the proper legal standard and, in the absence of any evidence to the contrary offered by the taxing bodies, the valuation of the facilities was not against the manifest weight of the evidence. In this regard, Edison notes it does not matter that the circuit court believed—erroneously so—that the remand would not be proper for the reason the taxing bodies failed to file a cross-appeal. Edison points out it is the court's judgment, not its reasoning, which matters. (*Schwarze v. Solo Cup Co.* (1983), 112 Ill. App. 3d 632.) Edison asserts the court's judgment that remand was not warranted, although clearly not correct for the reason that the taxing bodies failed to take a cross-appeal, is nevertheless correct for the reason that the taxing bodies failed to introduce evidence in contrast to that offered by Edison which, on review, allowed the court to affirm the Department's assessments as not being against the manifest weight of the evidence.

Further, Edison points out the taxing bodies did not raise the due process issue in the trial court and, therefore, they are precluded from arguing it for the first time on appeal. Since the 1979 amendment to section 21a—3 only clarified the existing meaning of the statute and did not change it, the taxing bodies had an opportunity to argue any or all of the points they now seek to raise. Instead, they chose to rely on the rate base argument. Edison additionally argues the taxing bodies, as State municipal corporations, are not entitled to due process protection from the State.

In reply, the taxing bodies argue they cannot be deemed to have abandoned in 1976 the issues they now seek to raise because they could not have anticipated the amendment to section 21a—3, which, they assert, "significantly altered" the definition of the term "economic productivity." Consequently, the taxing bodies argue that they should be allowed to present supplementary evidence to the Department of Reve-

nue with regard to the amended definition. They additionally argue, without any record reference, that although they did introduce evidence as to the value of the pollution control facilities and as to their productive earning capacity, the evidence in the record, including that adduced by Edison, was insufficient to support any conclusion as to those two facts. Consequently, the taxing bodies maintain their position that the record below was inadequate, and the cause should have been remanded for further proceedings.

Our view of the record in this case causes us to conclude that the court did not abuse its discretion in not remanding the cause to the Department for further proceedings.

Despite the taxing bodies' argument to the contrary, the language of the amendment to section 21a—3 itself expressly rebuts the presumption that the legislature intended to change the substantive law by passage of the amendment:

"This amendatory Act of 1979 is not intended to nor does it make any change in the meaning of any provision in this Section but is intended to remove possible ambiguities, thereby confirming the existing meaning of this Section in effect prior to the effective date of this amendatory Act of 1979." Ill. Rev. Stat. 1983, ch. 120, par. 502a—3.

Additionally, the Illinois Supreme Court found the terms "economic productivity" and "productive earning value" as used in the 1977 statute (Ill. Rev. Stat. 1977, ch. 120, pars. 502a—1 and 502a—3) were ambiguous and were expressly clarified by the 1979 amendment. (*Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495.) Thus, the court there concluded that the 1979 amendment could be used to interpret those phrases as they were used in the 1977 statute:

"Ambiguous" means having two or more possible meanings. (Webster's New World Dictionary 43 (1972).) Surely, the taxing bodies must be charged with the knowledge there were at least two reasonable interpretations of the phrases. Two such interpretations were sharply defined during the hearing before the Department of Revenue as exemplified by these excerpts from that hearing:

"Q. [Frederic Lane, Zion taxing bodies' counsel] Doesn't the Commonwealth Edison Company receive income because of the fact that it has included within its rate base these Pollution Control Facilities?

A. [John J. McHugh, Edison's supervisor of State and local taxes] It refers to the cost of the facilities through its inclusion in the rate base but it contributes nothing to productivity of the

station.

Q. The productivity that you are referring to now, however, is the generation of electrical power, is that correct?

A. That's our product, yes.

Q. But I am talking about the income received by the Commonwealth Edison Company because of the existence of that facility.

Isn't it true that this facility earns income in the same manner as an electrical generator that may be in the facility, in the Generating Plant?

A. In the sense that it is included in the total rate base, its cost, as I said before, is recovered through its inclusion in the rate base.

\* \* \*

MR. MORITZ [Edison counsel]: \*\*\* Income Attributable has to be read in light with [*sic*] the Statutory directives of the Department of Local Government Affairs, which is to assess the productive capacity of these facilities.

As Mr. McHugh has stated in response to that question once already, there is no productive capacity.

\* \* \*

MR. LANE: I have to take strong exception to Mr. Moritz' characterization of the Statute. The Statute says that the Department shall take—and I am reading now from Section 502A-3 of the Chapter 120.

'The Department shall take into consideration the actual or probable net earnings attributable to the facilities in question'—

MR. MORITZ: 'On the basis of their productive earning value.'

MR. LANE: Exactly. And it doesn't say anything about whether they have to produce electricity or not.

MR. MORITZ: But it does say they need to be productive.

MR. LANE: It does say the probable net—it does go on to talk about the number of factors, not merely the one that you talk about. But, the interesting thing is that none of these factors talk about what Mr. Moritz just said, but I have to emphasize that all these capital assets are treated the same way, which is the point we are trying to make.

\* \* \*

A. [John J. McHugh] \*\*\* When we are talking about productive, I think you have to include the consideration of the product. The word 'productive' implies product. Where we have a turbine generator or nuclear reactor that contribute directly to the in-

come derived from the product, the Pollution Control Facilities do not contribute in that same sense.

Q. [Frederic Lane] No, I didn't say productivity of the plant. I used the statutory term where productive modifies earning value.

Do they both contribute to the earning value to Commonwealth Edison Co?

\* \* \*

THE WITNESS [John J. McHugh] A. In answer to your question, I can say only in the sense that they are both included in the rate base and we are allowed to earn on our rate base."

Edison correctly points out that:

"[W]here a party has presented his case or defense to a commission upon a certain and definite theory, he will not be permitted to change in court and prevail upon another theory and issue not presented to the commission." *Robert S. Abbott Publishing Co. v. Annunzio* (1953), 414 Ill. 559, 565-66; accord, *Environmental Protection Agency v. Pollution Control Board* (1976), 37 Ill. App. 3d 519, 521.

The "certain and definite" theory relied on by the taxing bodies below in construing the terms of sections 21a—1 and 21a—3 was impliedly excluded by the legislature's 1979 clarifying amendment to section 21a—3, and the exact same theory was raised by the Department of Revenue and rejected by the Illinois Supreme Court in *Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495, 501-02, 506. The taxing bodies had the opportunity to pursue as many other theories as they may have wished at the hearing when they challenged the Department's assessments. They chose to rely at the hearing on one theory only, and failed at that time to refute with contrary evidence the testimony presented by Edison in support of its theory of the construction of the statute which was later upheld. A second opportunity to challenge the same assessments under a different theory does not spring, phoenix-like, from the ashes of the once-successful first theory.

The reinstatement of the original 1976 assessments on these five pollution control facilities brought the cause full-circle to its place of beginning. The circle is complete, and the litigation must end. The taxing bodies' dogged assertion that the 1979 amendment altered the law is not well taken. It ignores the clear language of the amendment itself and the supreme court's determination of the application to be afforded the amendment. Their attempt to analogize the instant case to *Young v. Board of Trustees* (1978), 57 Ill. App. 3d 689, is without merit. In

that case, the statute which precluded the plaintiff from participation in a municipal police pension fund because of her age was amended subsequent to the administrative hearing, but prior to the appeal. Contrary to the terms of the original statute which precluded her outright from participation in the fund, the amended statute prescribed a procedure whereby those who had been excluded by reason of the age restriction could elect to participate in the fund. Since the plaintiff there had no opportunity to present evidence in order to demonstrate that she had elected to participate in the fund, and in view of the court's belief the amendment clearly expressed a legislative intent that it be applied retroactively, the court remanded the cause for supplemental hearing before the administrative agency. The plaintiff's explicit exclusion from participation in the fund under the original statute, and the explicit requirements of the election procedure embodied in the amended statute in that case, renders it totally inapposite to the instant case. The original statute there was not ambiguous, it explicitly excluded the plaintiff; the amendment to the statute there was not a clarification of the exclusion; rather, it added a curative, remedial provision whereby she was no longer precluded from participation, but could elect to participate upon the performance of certain prescribed acts. Until the curative amendment was passed, the plaintiff there would have had no basis for arguing that she nonetheless could elect to participate since the outright age restriction of the prior statute admitted of no other conclusion but that she was excluded. Such was not the case here, however, where the ambiguity of the terms ''economic productivity'' and ''productive earning value'' made the statute susceptible to more than one construction. There was ''room for argument.''

We conclude the taxing bodies, having put all of their eggs in one basket, must suffer the loss of all of the eggs when the basket bottom falls out.

It is true, as the taxing bodies note, that a remand to the administrative agency for further proceedings is within a court's discretion to grant when the record below is inadequate or the facts insufficient to allow resolution of the issue. (Ill. Rev. Stat. 1983, ch. 110, par. 3—111; *e.g.*, *Gatica v. Department of Public Aid* (1981), 98 Ill. App. 3d 101; *Columbia Quarry Co. v. Department of Revenue* (1966), 34 Ill. 2d 46.) However, the taxing bodies fail to note that section 3—111(a)(7) also provides that:

> "[N]o remandment shall be made on the ground of newly discovered evidence unless it appears to the satisfaction of the court that such evidence has in fact been discovered subsequent to the termination of the proceedings before the administrative agency

and that it could not by the exercise of reasonable diligence have been obtained at such proceedings; and that such evidence is material to the issues and is not cumulative." Ill. Rev. Stat. 1983, ch. 110, par. 3—111(a)(7).

The taxing bodies assert that since the 1979 amendment now affirms that the utility-owned pollution control facilities may have productive earning value to the extent that they (1) increase production, (2) reduce production costs, or (3) produce a byproduct, the record of the hearing below must be found to be insufficient for lack of evidence as to those factors. Thus, they argue, since the circuit court properly could not receive such evidence itself, it was an abuse of its discretion not to remand the cause to the Department for that purpose.

Edison wholly rejects this argument, calling the taxing bodies' assertions about the insufficiency of the record "simply not true," and charging specific blatant misrepresentations of the record.

We agree that the argument of the taxing bodies is contradicted by the record. John J. McHugh, Edison's supervisor of State and local taxes, testified on direct examination that the five pollution control facilities in question do not "in any way permit Commonwealth Edison to increase the productive capacity of the Zion Nuclear Generating Station," nor do they "increase or enhance Edison's ability to increase its production of electrical energy." Further, McHugh testified the pollution control facilities "increase the cost attributable to the production of electrical energy," and that the "liquid rad waste system has a byproduct [which] is radioactive liquid waste" that has no market value, is difficult to dispose of, and is an additional cost. Mr. McHugh was not cross-examined as to these points; rather, the thrust of the cross-examination of him was to ascertain that although the facilities do not have "productive earning value" as Edison interpreted that term at the hearing (production of electrical energy), they do have an "earning value" by virtue of their inclusion in Edison's rate base "in the sense that [Edison] is allowed to recover the cost of [the facilities] as [they] do any other piece of capital expenditure."

Certainly the pointed questioning by Edison of its witness concerning the productive earning value of the facilities left the door wide open for the introduction of contrary testimony, specifically of the type which the taxing bodies suggest they could present "given the opportunity." As an example, they argue: "Absent either the Amertap [which reduces the growth of algae in the condensors] or the large diameter pipes, reactor cooling efficiency would be reduced, with a concomitant reduction in the generation of electricity. Production costs might also increase due to increased reactor down time."

It seems reasonable to conclude that evidence of this type existed at the time the hearing was held, and could have been presented through the exercise of reasonable diligence. Defenses not presented to the administrative agency may not be considered upon review. (*Battle v. Illinois Civil Service Com.* (1979), 78 Ill. App. 3d 828, 833.) A remand for further fact-finding is necessary only where the record of the administrative hearing is clearly inadequate. (*Board of Education v. Ingels* (1979), 75 Ill. App. 3d 334; *Sanderson v. De Kalb County Zoning Board of Appeals* (1974), 24 Ill. App. 3d 107.) Here, there was unrebutted testimony that the pollution control facilities have no "productive earning value" as that phrase is construed for purposes of sections 21a—1 and 21a—3. Consequently, where there was no conflict as to the relevant facts, whether the pollution control facilities were properly assessed by the Department was a question of law for the court to determine. (*Hale v. Hellstrom* (1981), 101 Ill. App. 3d 1127, 1130; *Pryka v. Board of Fire & Police Commissioners* (1978), 67 Ill. App. 3d 210, 214.) It was the court's duty on administrative review to examine the record to determine whether the agency's decision was in accordance with the approved legal standard and was not against the manifest weight of the evidence. (*Board of Review v. Property Tax Appeal Board* (1979), 69 Ill. App. 3d 265, 268.) The proper function of the appellate court on review is not to reweigh evidence presented at hearings before an administrative body, rather, to determine whether the findings of the circuit court on review are correct or are in error. (*Board of Education v. Scott* (1969), 105 Ill. App. 2d 192.) The record here was not inadequate or insufficient, and the court's discretion was not abused when it chose not to remand.

The taxing bodies' assertion the court's denial of remand was violative of due process is utterly without merit. As pointed out by Edison, taxing bodies are municipal governmental entities (Ill. Const. 1970, art. VII, sec. 1) and, as such, are not entitled to due process protection against the State. (*Village of Riverwoods v. Department of Transportation* (1979), 77 Ill. 2d 130, 136; *E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 594-95, *appeal allowed* (1983), 96 Ill. 2d 559.) Further, such entities do not constitute "persons" within the meaning of the due process and equal protection clauses of the fourteenth amendment. (*People v. Valentine* (1977), 50 Ill. App. 3d 447.) Assuming, *arguendo*, due process protection did extend to the taxing bodies, their failure to raise the issue prior to taking this appeal has resulted in a waiver of the issue. (*Angelini v. Snow* (1978), 58 Ill. App. 3d 116, 118; *Davis v. Davis* (1971), 131 Ill. App. 2d 459, 460.

REINSTATEMENT OF 1976 ASSESSMENT

■ The taxing bodies argue the court erred in reinstating the original 1976 assessments because they were not predicated on the "now-clarified" standard of economic productivity. The taxing bodies assert that by reinstating the 1976 assessment, the court, in effect, "prejudged the economic productivity of the Zion station facilities under the clarified standard, and found it wanting." Such action, they assert, amounts to "implicit fact-finding" expressly prohibited by section 3—110 of the Administrative Review Law, wherein it stated: "No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) In support of their position, they cite two cases, *Parker v. Department of Registration* (1955), 5 Ill. 2d 288, 294, and *Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 982.

We find neither case is factually apposite, however, and each simply supports the general rule that the scope of review of an administrative agency decision is limited to the extent of the record below.

Edison responds that the stipulation filed by the taxing bodies in April 1980 should operate to prevent them from now claiming "that the issues herein are different than the issues in the Cook County case." It argues it is hornbook law that parties are bound by their stipulations, and that the stipulation at bar read in the procedural posture of the case, amounted to an agreement that if the supreme court ruled against Edison, the $24,870,240 assessment (the 1977 assessment) would stand. On the other hand, if the supreme court ruled favorably to Edison, the $374,265 assessment (the 1976 assessment) would be reinstated and Edison would receive a refund of the money paid under protest.

The taxing bodies reply that although the terms of the stipulation evidence an intent to be bound by the precedential effect of the legal issues resolved by the supreme court in the Cook County case, there was no contemporaneous agreement that the stipulation would extend to factual issues as well. The factual conclusion of the circuit court which is disputed by the taxing bodies is that the Department's 1976 assessment "followed the proper legal standard." "Given the opportunity," assert the taxing bodies, "they can establish that most, if not all, of the pollution control facilities at Zion station enhance production or reduce production costs."

The stipulation entered into at bar is as follows:

"It is hereby stipulated by and between the parties hereto by their respective attorneys of record that the above entitled cause be stayed pending a final resolution by an Illinois court of last resort in the Plaintiff's appeal from an order of the Circuit Court of Cook County, adjudicating the same issues present in this cause against the Plaintiff; that appeal is now pending in the cause entitled *Commonwealth Edison Company*, Appellant, v. *Department of Local Government Affairs, et al.*, Appellees, Appellate Court of Illinois, First District, General No. 79-1520."

The stipulation was signed by representatives of Lake County, the taxing bodies, Edison and the Department.

■ It is well established that parties will be bound by their stipulations (*Commercial Union Assurance Co. v. Scammon* (1890), 35 Ill. App. 659, *aff'd per curiam* (1893), 144 Ill. 490, 506), and courts will enforce a stipulation unless there is a showing that the stipulation is unreasonable, the result of fraud or violative of public policy. *In re Marriage of Miller* (1983), 112 Ill. App. 3d 203.

Clearly, the facts of this case and the facts of the Cook County case were different, and involved different pollution control facilities. However, the stipulation was that the pending appeal of the Cook County case was "adjudicating the same issues present in this cause." As Edison suggests, the entry of the stipulation was a part of the procedural history of the case, and it must be viewed in that context. The taxing bodies' complaint originally filed before the Department concerning the 1976 assessments, challenged them on the basis that the facilities were economically productive by virtue of the inclusion of their value in Edison's rate base, and they challenged the inclusion in the assessment of approximately 60 million dollars' worth of excess building structures, the figure Edison represented to the Department as the original cash value of the excess structures. "This is, the taxing bodies were challenging the valuation that was put on excess structures which had been certified as pollution control facilities by the Pollution Control Board." (From the circuit court's memorandum order, July 13, 1983.) The court order also recited: "The taxing bodies never challenged the certification given by the PCB and did not offer any evidence as to the value of the facilities. * * * Here, the Zion taxing bodies have relied on Edison's complaint to bring the valuation issue before the court. There is evidence in the record before the Department in which the taxing bodies seem to challenge the 60 million dollar figure and the excess structures involved. Yet, although the taxing bodies did win on their legal argument, the Department applied the one-third figure urged by the taxing bodies to the 60 million dollar figure. Therefore, since the taxing bodies

have failed to appeal the use of that figure they have waived any objection to it." The Department of Local Government Affairs' January 12, 1977, decision entered in the taxing bodies' favor recited:

"[The taxing bodies] contended that the assessment as made by the Department of Local Government Affairs was incorrect in that salvage value was used in arriving at the value of the air and water pollution facilities located at the plant in question. They further contend that the cost minus depreciation of the facilities in question were taken into consideration by the I.C.C. in determining the electric rates allowed."

The Department decided the facilities in question were not strictly for public benefit because the return to Edison on its investment in the pollution control facilities was the same as the return to it on the rest of the plant. Consequently, the Department increased Edison's assessment for all five facilities to 33⅓% of their present fair cash value to almost $25 million from the original assessment of approximately $374,000.

Thereafter, Edison filed the instant application for administrative review challenging the Department's decision on the basis the increased assessment "failed to give meaning to the word 'productive' as used in section 21a—3 (*i.e.,* inclusion of the facilities in the rate base as giving the facilities productive earning value), that the Department's action amounted to a de-certification of the facility as pollution control when such certification power is vested only in the PCB, and that the Department's decision to increase the assessment was without any support in the record." The specific relief prayed for was a setting aside of the increased assessment and reinstatement of the original 1976 assessment.

■ The issue involved throughout the entire procedural history of this cause was the correctness of the assessment of Edison's pollution control facilities. The resolution of that issue presented a question of law; *i.e.,* whether the facilities may be considered to have "economic productivity" and/or "productive earning value" within the meaning of sections 21a—1 and 21a—3 of the Act by reason of their inclusion in the rate base upon which Edison's rate of return on its capital investments is computed. The parties here agreed to stay the administrative review pending resolution of the Cook County case in the supreme court which was, by the parties' own stipulation here, "adjudicating the same issues present in the [instant] cause." As admitted by the taxing bodies, the intention of the parties was to be bound by the precedential effect of the supreme court's resolution of the legal issues. Edison's complaint for administrative review presented only the question of law noted above. The supreme court decided the same question

of law in Edison's favor, and contrary to the taxing bodies' position. Accordingly, all that remained for the circuit court to do below was to afford Edison the relief requested in its complaint; *i.e,* reinstatement of the original 1976 assessment.

The court's reinstatement of the 1976 assessment did not, as the taxing bodies suggest, amount to fact-finding; *i.e.,* a "prejudgment" of the economic productivity of the facilities under the clarified standard. As required by section 3—110 of the Administrative Review Act (Ill. Rev. Stat. 1983, ch. 110, par. 3—110), the circuit court's review extended to all questions of law and of fact presented by the entire record before the court. Whether the original 1976 assessments were proper or not was the question of law presented to the Department by the taxing bodies on the basis asserted in their June 21, 1976, letter to the Department of Local Government Affairs, which letter requested review of the assessments. In that letter, the taxing bodies note:

> "We are informed that the total cost to Edison of the [five pollution control facilities] was in excess of $74,000,000. The total 1976 assessment for these items, however, is only $374,265. Accordingly, the persons and the taxing bodies described above feel aggrieved by the assessments referred to above and are hereby applying to the Department for a review and corrections of such assessments.
>
> * * *
>
> We note in particular that the foregoing provision [section 21a—3] requires the Department to take into consideration the 'net earnings attributable to the facilities in question, capitalized on the basis of their productive earning value to the owner.' Edison, of course, is a public utility whose rates are fixed by the Illinois Commerce Commission (ICC). These rates are determined so that, in the aggregate, Edison recovers its costs of operation and earns a rate of return, fixed by ICC, on its total investment. We are informed that the foregoing five facilities are included in Edison's rate base at $74,000,000 less depreciation allowed by the ICC. Edison, unlike a company that is not a public utility, earns its full permissible rate of return on its investment in the foregoing facilities regardless of whether such facilities may be pollution control facilities. We submit, therefore, that the foregoing facilities should be assessed by the Department at 33⅓% of their full fair cash value."

Over and above the fact that the taxing bodies agreed to be bound by the supreme court's decision on the same question of law, our reading of sections 137, 138 and 139 of the Act (Ill. Rev. Stat. 1983, ch. 120, pars. 618, 619, and 620), which provide for review of the original

assessments made by the Department, causes us to conclude that no further challenge to the propriety of the 1976 assessment should be permitted at this point in the proceedings, and that the court did not err in reinstating the 1976 assessment. Section 139 of the Act specifically provides, "If the court, by its final judgment, shall, on review, set aside or reduce such assessment, and the taxes so erroneously assessed shall have been paid [as they were here], the person or corporation so erroneously paying such taxes shall be entitled to a refund thereof as provided by Section 286 [Ill. Rev. Stat. 1983, ch. 120, par. 767] of this Act." (Ill. Rev. Stat. 1983, ch. 120, par. 620.) Even if the court had not specifically ordered reinstatement of the 1976 assessment, it appears the same result would have obtained simply by operation of law, since Edison would be entitled to a refund of the taxes it erroneously paid.

Consequently, the circuit court did not err in reinstating the 1976 assessment.

### WAIVER OF EXCESS STRUCTURE VALUATION

■■ The taxing bodies' last contention on appeal is that the court erred in concluding they had waived their right to contest the valuation of the excess structure facilities because they did not file a timely cross-complaint upon Edison's application for administrative review of the Department's decision. They assert they had no appealable interest after the Department's decision was made in their favor on the legal issue concerning the rate base. The factual issue concerning the valuation of the excess structure facilities became, they argue, superfluous. Thus, if they had appealed that issue by way of counterclaim, and had they prevailed, the assessment of the excess structure facility would have been assessed at 33⅓% of some figure less than the 60 million. They urge this court to reject the circuit court's "Catch-22 reasoning" and remand the cause to the Department for further proceedings on the valuation question.

Edison characterizes the issue of the valuation of the excess structure facility as a further attempt on the part of the taxing bodies to renege on their stipulation, and a "smoke screen" behind which lies the true issue; *i.e.*, whether the cost of certain portions of the pollution control facilities (doors, floors, ceiling, etc.) should be deducted from the cost of the pollution control facility, thus removing consideration of the cost of those portions from the special tax treatment afforded pollution control facilities, and concomitantly causing those portions to be added back to the local assessment rolls as "productive" portions of the Zion station, thus taxable at 33⅓% of the fair cash value.

Edison asserts the Department would have no authority to make such a decision, since authority is vested only in the PCB to certify

which equipment, facilities or portions of facilities are "designed, constructed, installed, or operated for the primary purpose of eliminating or reducing air and water pollution." (Ill. Rev. Stat. 1983, ch. 120, par. 502a—2.) The authority to decertify pollution control facilities is also vested solely in the PCB. Any acts or orders by the Department beyond those authorized to be made by it are void. *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503; *City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108.

The taxing bodies reply that Edison is wrong in its contention that they seek remand either for a *de novo* hearing or review of the certification of certain excess structures. The taxing bodies claim they merely seek to invoke the "broad discretionary powers of the circuit court to remand, when, as here, further evidence is required to complete the record of the administrative agency with respect to whether the five pollution control facilities at the Zion station are economically productive within the meaning of the amended statute."

Whether the circuit court erred or not in concluding this issue had been waived due to the lack of a cross-complaint is of no moment. It has been stated innumerable times that appellate review is addressed to the court's judgment, not its reasoning. As concluded in the first issue, the agency's record below was not inadequate or insufficient so as to require a remand. Any deficit in the record of the hearing before the Department on the issue of valuation of the Zion pollution control facilities, including particularly the excess structure facility (consideration of which became "superfluous" according to the taxing bodies), is indisputably attributable to the taxing bodies' single-theoried advancement of its case before the agency, and its willingness to accept the benefit of the Department's original decision entered in its favor. Having once accepted the favorable product of the equation (*i.e.,* 33⅓% of the fair cash value which included the $60 million excess structures ($24,870,240)), the taxing bodies have waived any challenge now to the factorial components of the equation.

Consequently, we conclude the court did not err in not remanding the cause to the agency for further proceedings which were beyond that agency's power to conduct. *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503; *City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.